---

TYRON ESPEY,

                             Plaintiff,

                 -vs-                                    DECISION AND ORDER

SGT. RICE, SGT. OPPERMAN, and C.O. LAMAR,            16-CV-6421-CJS-JWF

                         Defendants.

---

## APPEARANCES

| | |
|---|---|
| For Plaintiff: | Woodruff Lee Carroll, Esq. |
| | Woodruff Lee Carroll, PC |
| | 600 East Genesee Street Suite 108 |
| | Syracuse, NY 13202 |
| | (315) 474-5356 |
| | |
| For Defendants: | Hillel David Deutsch, A.A.G. |
| | NYS Attorney General's Office |
| | Department of Law |
| | 144 Exchange Boulevard |
| | Rochester, NY 14614 |
| | (585) 327-3222 |

## INTRODUCTION

**Siragusa, J.** This civil rights case alleging that a New York State inmate was subjected to excessive force is before the Court on Defendants' motion for summary judgment, based on contention that Plaintiff failed to comply with the exhaustion requirement in the Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997e. Notice of Motion, Apr. 2, 2019, ECF No. 42. Since the Court finds material issues of fact as to whether the Inmate Grievance Program ("IGP") was "available" to Plaintiff, it denies the application, and will set the matter down for a pretrial hearing on the issue.

## STANDARD OF LAW

"Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).

## BACKGROUND

Plaintiff alleged in a complaint filed with the New York State Department of Corrections and Community Supervision ("DOCCS") pursuant to New York Civil Service Law § 75, that on September 19, 2015, Corrections Officer Lamar kicked him in the groin and Sergeant Opperman pushed him face first into a wall, then started punching him in his back and ribs while Sergeant Rice slammed his head against the wall. Ex. B, Deutsch Decl., Apr. 2, 2019, ECF No. 42-3. In his federal civil rights complaint filed in this Court on June 22, 2016, Plaintiff indicated he did not exhaust administrative remedies. In that regard, he responded to the form complaint as follows: "If you did not exhaust your administrative remedies, state why you did not do so: The officers made threats and I was scared for my safety so I told my family. And my family called O.S.I." Compl. at 5, ECF No. 1. Attached to the complaint is the same narrative Plaintiff filed with DOCCS in his § 75 complaint.

Defendants' answer to the subject complaint, filed on September 23, 2016, ECF No. 7, contains only the following regarding exhaustion:

> AS TO "EXHAUSTION OF ADMINISTRATIVE REMEDIES":
>
> 11. Deny the allegations contained in paragraph "Exhaustion of Administrative Remedies", including but not limited to discreet sub-parts or referenced documents, of the complaint.

Answer ¶ 11. Thus, Defendants have *denied* Plaintiff's allegation that he did *not* exhaust administrative remedies. Further, Defendants did not claim failure to exhaust administrative remedies as an affirmative defense.

Two years after filing their answer, Defendants sought leave from United States Magistrate Judge Jonathan W. Feldman, to whom the Court referred this case for pretrial matters, to amend the complaint to include the affirmative defense of failure to exhaust. Judge Feldman denied that request "without prejudice to renew for the reasons stated on the record." Decision & Order at 1, Jun. 13, 2018, ECF No. 29. On March 12, 2019, Judge Feldman addressed Defendants' second motion to amend their answer to add the affirmative defense of failure to exhaust. Decision & Order at 1, ECF No. 39. In their motion, Defendants argued that allowing the amendment would not cause prejudice to Plaintiff "because in their original answer to the complaint, the defendants denied plaintiff's allegation that he had exhausted his administrative remedies." *Id*. at 3. Judge Feldman allowed the amendment. *Id.* at 6.

Defendants' amended answer, filed on March 25, 2019, ECF No. 41, contains this affirmative defense: "AS AND FOR A NINTH DEFENSE, Plaintiff has failed to exhaust administrative remedies as to some or all of the allegations of the Complaint." Amended Answer at 5.

Viewing the evidence in the light most favorable to the non-moving party, the Court will adjudicate this motion based on Plaintiff's statement in the complaint that he did not exhaust administrative remedies because "[t]he officers made threats and I was scared for my safety...." Compl. at 5.

In his memorandum of law, Plaintiff's counsel argues three bases for forgiving his client's failure to exhaust: (1) Defendants are estopped from asserting the affirmative defense of failure to exhaust; (2) Plaintiff relied on a statement from the Inspector General that he did not need to exhaust; and (3) exhaustion was unavailable to him because of the threats by the guards and his use of the New York Civil Service Law § 75 complaint. The Court will address each of these arguments.

*Grievance Process*

New York State's IGP was first established in 1976 pursuant to New York Corrections Law § 139. *Amador v. Andrews*, 655 F.3d 89, 96–97 & n.3 (2d Cir. 2011) (citations omitted). The IGP defines a grievance as "a complaint, filed with an IGP clerk, about the substance or application of any written or unwritten policy, regulation, procedure or rule … or the lack [thereof][.]" N.Y. Comp. Code R. & Regs., tit. 7 ("N.Y.C.R.R.") § 701.2(a) (2006). To initiate the three-step grievance process, an inmate must file a written complaint with the Inmate Grievance Resolution Committee ("IGRC"),[1] a facility-specific committee composed of inmates and appointed staff members. *See* 7 N.Y.C.R.R. § 701.4–5. The complaint must "contain a concise, specific description of the problem and the action requested." N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5 (Lexis Advance through May 10, 2019). Upon filing, the grievance clerk numbers and logs each grievance. *Id.* § 701.5(a)(2).

If the inmate receives an unfavorable IGRC determination, the second step is to file an appeal with the facility superintendent. *Id.* § 701.5(c). If the superintendent's decision is unfavorable, the third step is an appeal to the Central Office Review Committee ("CORC"). *Id.*

---

[1] "Typically, inmates file grievances with the grievance clerk." *Williams v. Correction Officer Priatno*, 829 F.3d 118, 119 (2d Cir. 2016) (citing N.Y.C.R.R. § 701.5(a)(1) ). "However, if an inmate is housed in the special housing unit …, and therefore segregated from the regular prison population, he may give the grievance complaint to a correction officer to file for him." *Id.* (citing N.Y.C.R.R. § 701.7).

§ 701.5(d); *see also* DOCCS Directive #4040 ("Dir. #4040"). Documents from CORC show that Plaintiff did not exhaust any grievance to that body concerning the allegations of September 19, 2015.

## Estoppel

The Second Circuit long ago recognized that estoppel is applicable to the PLRA exhaustion requirement. *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004). In *Ziemba*, the plaintiff had complained to the FBI, but the Second Circuit made no finding that a complaint to the FBI and their subsequent investigation "amounted to exhaustion of his administrative remedies." *Id.* at 164. On remand, the district court denied the defense motion for summary judgment based on failure to exhaust because of a material issue of fact. *Ziemba v. Wezner*, No. 3:98CV2370(DFM), 2006 WL 860091, at *4 (D. Conn. Mar. 31, 2006).

As to exhaustion, Plaintiff's counsel argues that "[t]he alleged conduct of the guards violates the United States Constitution. They cannot threaten prisoner with physical harm to cover up their own wrongdoing." Pl.'s Mem. of Law at 2, May 10, 2019, ECF No. 48. Contrary to this Court's local rule, neither Plaintiff when he was *pro se*, nor counsel, has filed the required opposition to Defendants' statement of undisputed facts. W.D.N.Y. Loc. R. Civ. P. 56(a)(2) (2018). Instead, counsel filed an affidavit alleging facts of which he could not possibly have personal knowledge. Carrol Aff. ¶¶ 4–9. However, Defendants did depose Plaintiff and that transcript is part of the file.

According to Plaintiff's testimony at the pretrial deposition, he was asked the following questions and gave the following answers:

> Q. Right. I'm talking about grievances right now. So I'm going to ask about—I'm going to ask about the other things in a minute. You filed—did you file a grievance about the assault you just alleged on the 19th[?].

A. I grieved it to the Inspector General's Office, yes. They would—when I filed a grievance, they were playing with my mail so I had to—the—the officers wouldn't send out my mail.

\* \* \*

Q. Okay. When you got—did you file a grievance when you were in the box?[2]

A. That was the written paper, yes.

Q. Okay. What written paper?

A. The the—the—of what happened. Because you can file a grievance on a piece of paper when the officers they—they deny you a grievance so you file it on a piece of paper.

Q. Okay. So you wrote down on a sheet of paper what happened?

A. Yes.

Q. Where—what did you do with that sheet of paper?

A. I sent it to the superintendent, the grievance department, my mom and I gave a copy to my next door neighbor at rec and then I asked him to mail a copy to my mother too. Also. Just in case they were playing with my mail.

Q. Okay. So—so you write the grievance, you send it your mom, you send it to the grievance department, you send it to the superintendent and you give a copy to your neighbor to write to – to mail to your mom?

A. Yes.

Q. Okay. Okay. Whe—what – what response do you get from the grievance department?

A. I didn't get no response. I only got a response from the Inspector General's Office.

\* \* \*

Q. [Y]ou said you wrote them the original grievance, you don't hear back from them, time passes. Do you write them a letter saying, "Hey, what happened to my grievance?"

A. Yes.

---

[2] No explanation is contained for the phrase "in the box." The Court will assume it means the Special Housing Unit ("SHU").

Q. Okay. When do you write that letter?

A. I—I don't know when exactly that letter was written. I know it was after I got off the box. After I was released from the S.H.U.

* * *

Q. Okay. Did you receive a response to that?

A. I don't think so. I don't think – I—I didn't receive a response to anything, on the whole situation from anyone.

Q. Okay. Did you ever appeal that grievance? Did you ever write to anybody saying, "Hey to—I never received a response to this appeal so I'm writing an appeal?"

A. To Albany. I wrote to Albany, yes.

Q. Okay.

A. And they wrote me back and told me to—to write someone else. They told me I have to do something. I forgot.

Espey Dep. 60:13—21; 61:15—62:18; 64:5–13, 17—25; 65:2—6. Unfortunately, counsel never inquired about Plaintiff's statement in the complaint that he did not exhaust administrative remedies.

However, it appears that Plaintiff's counsel has now abandoned any reliance on Plaintiff's stated belief at the deposition that he did grieve the assault of September 19, 2015, and is, instead, following Plaintiff's lead set by the non-exhaustion statement in his complaint. Plaintiff's counsel argues that Plaintiff received threats, and this is one factor[3] that made the grievance process unavailable to him. Plaintiff's deposition testimony was that after a fight took place at the correctional facility, which Plaintiff states did not involve him, he was,

> placed on the wall and asked who was [sic] the inmates fighting, and I told them I didn't know fighting and then they—I was threatened by the officers, and told that if I didn't—they got one man a sergeant, and if I didn't tell them who was

---

[3] The other factor was that he was in SHU. However, as explained, below, being in SHU should not preclude the filing of a grievance, but even if it did, Plaintiff was released before the 21-day window to file a grievance had elapsed. Def.s' Reply Mem. of Law at 6—7, May 17, 2019, ECF No. 49-2.

fighting I was going to be blamed, and they was going to take me to the box and fuck me up.

Espey Dep. 27:19—25. When asked who was threatening him, Plaintiff responded, "Mehan and I don't know the other officer—it was more—it was a bunch of officers standing behind me...." Espey Dep. 30:13—15. He also complained about being harassed for the rest of his stay at Orleans Correctional Facility by "Officer Phoner," Espey Dep. 66:12—13, a corrections officer on E dorm where Plaintiff was taken after being released from the Special Housing Unit ("SHU"). *Id*. at 66:17—19. He testified that Phoner "said he was going to put something in my property to give me a new charge. He said he was going to place a weapon in my property and a bunch of other harassing threats." Espey Dep. 68:20—23. Further, Plaintiff testified that when he did file grievances, "they sent Sergeant Rice to be the sergeant on my grievances, and his—his—his disposition were real biased because he, as you see and as you already know, he's one of the—one of the—one of the other parties in this case of assaulting me." Espey Dep. 59:3—7.

Defendants argue that because Plaintiff's affidavit contradicts his deposition testimony,

> Plaintiff has thus placed himself in a no-win situation. He cannot use the arguments proffered in his affidavit—explaining why he was unable to grieve — because it directly contradicts his deposition testimony that he did file a grievance. However, he also cannot raise the argument suggested by his deposition—that he mailed a grievance which was never filed—both because it would contradict his sworn affidavit and because it would constitute raising a new argument on a sur-reply (assuming the Court gave Plaintiff leave to file a sur-reply), and "[a]rguments raised for the first time in sur-replies are improper." *Duncan v. Crowell*, 2017 U.S. Dist. LEXIS 166677, at *1 n.1 (W.D.N.Y. Oct. 4, 2017) citing *Dinsio v. Donnelly*, 2007 U.S. Dist. LEXIS 90340, at *12—13 n.8 (N.D.N.Y. Sept. 24, 2007) ("It was improper to raise new claims and arguments in a supplemental memorandum."), adopted by 2007 U.S. Dist. LEXIS 84670 (N.D.N.Y. Nov. 15, 2007).

Def.s' Reply Mem. of Law 4—5, May 17, 2019, ECF No. 49-2. Adding to the confusion is what the Court pointed out above: Defendants' answer[4] disputes Plaintiff's complaint paragraph stating that he did not exhaust.

"Because non-exhaustion is an affirmative defense, defendants bear the burden of showing that a prisoner has failed to satisfy the exhaustion requirements…. Plaintiff must then establish that the relevant exhaustion procedure was unavailable to him under *Ross*."[5] *Thomas v. Kinderman*, No. 917CV00425DNHTWD, 2017 WL 8293605, at \*5 (N.D.N.Y. Dec. 4, 2017), *report and recommendation adopted,* No. 917CV425DNHTWD, 2018 WL 1441336 (N.D.N.Y. Mar. 22, 2018) (citations omitted). Because Defendants have denied Plaintiff's statement that he *failed* to exhaust administrative remedies and elicited from him during his deposition that he *did* attempt to file a grievance, the Court finds that a material issue of fact precludes disposition on estoppel grounds at summary judgment.

### The Inspector General's Statement & N.Y. Civil Service Law § 75 Complaint

Plaintiff relates that his family got the Inspector General involved and during that individual's investigation, he interviewed Plaintiff and told him that he did not need to file a grievance. However, the grievance procedure does not pertain to filing a complaint with the Inspector General. Federally, to comply with 42 U.S.C. § 1997e, a plaintiff must follow the prescribed grievance procedure unless it is unavailable to him.

> PLRA requires "proper exhaustion," which "'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" PLRA exhaustion thus "demands compliance with an agency's deadlines and other critical procedural rules."

*Ruggiero v. Cty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) (quoting *Woodford v. Ngo*, 126

---

[4] The same denials that were in the original answer are in the amended answer.

[5] *Ross v. Blake*, 136 S. Ct. 1850 (2016).

S. Ct. 2378, 2385 (2006) (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1024 (7th Cir.2002))). Filing a complaint with the Inspector General does not comply with the PLRA's requirements. As for Plaintiff's claim that the Inspector General told him it was unnecessary to file a grievance, that statement is incorrect and would not have precluded Plaintiff from pursuing a grievance through the DOCCS's grievance process, described above. *See Kearney v. Gebo,* 713 Fed. App'x 39, 42 (2d Cir. 2017) ("Kearney's pursuit of alternative relief from the Inspector General's Office and Commission of Correction did not render the ordinary inmate grievance procedures 'unavailable' to him, such that he is excused from complying with those ordinary procedures."). As for the Civil Service Law § 75 complaint process, the same answer would apply—using that procedure did not make the DOCCS's grievance procedure "unavailable" to Plaintiff.

During oral argument on June 25, 2019, the Court raised the issues identified above and asked Plaintiff's counsel to indicate whether there was a material issue of fact requiring a hearing, or whether the Court should decide the motion on the law based on his position that Plaintiff's filing of a letter with the inspector general satisfies the exhaustion requirement of 42 U.S.C. 1997e. ECF No. 52. In a letter dated July 7, 2019, responding to the Court's inquiry, Plaintiff's counsel wrote:

> Plaintiff is not contending that Espey meets 42 U.S.C. 1997e as a matter of law. Plaintiff is contending that Article 75 is a legitimate alternative to the prison grievance process and that what Espey did is sufficient to meet the standards of 42 USC 1997e on his facts precluding summary judgment. The issues raised by the Defense create a question of fact."

Letter from Woodruff Lee Carroll, Esq., to the Court (Jul. 7, 2019) at 1, ECF No. 54. The first two sentences are conflicting and the third is illogical. Plaintiff quite clearly is arguing that, as a matter of law, his pursuit of a complaint under Article 75 was sufficient to meet the exhaustion requirement of 42 U.S.C. § 1997e. He cites no authority for this proposition. He

does cite *Matter of Bukowski (State of N.Y. Dep't of Corr. & Cmty. Supervision)*, 2017 NY Slip Op 01934, ¶ 1, 148 A.D.3d 1386, 1386, 50 N.Y.S.3d 588, 590 (N.Y. App. Div. 3d Dep't 2017). That case makes absolutely no mention of the exhaustion requirement under 1997e. That case involved a dispute between DOCCS and a correctional officer concerning disciplinary actions taken against the correctional officer for kicking an inmate in the groin and rupturing his testicle. The issue on appeal was whether the penalty awarded by the arbitrator (arbitration was required under the collective bargaining agreement) could be vacated. As discussed above, the process required in New York to satisfy the requirements of 1997e is the grievance process, not an Article 75 complaint.

### CONCLUSION

Plaintiff's complaint to the Inspector General, and his use of the Civil Service Law § 75 procedure did not suffice to meet the exhaustion requirements in the PLRA. A material question of fact precludes summary judgment on the question of whether Defendants are estopped from asserting the affirmative defense of failure to exhaust, or whether they have shown that Plaintiff failed to exhaust. Therefore, in accordance with *Messa v. Goord*, 652 F.3d 305, 310 (2d Cir. 2011),[6] the Court will schedule a pretrial hearing on the exhaustion issue to resolve the factual dispute so that it can rule on the issue, which will either dictate dismissal of the case, or the setting of a trial date.

DATED:     October 17, 2019
              Rochester, New York

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge

---

[6] The Court of Appeals approved of the district court's decision to hold a pretrial hearing on whether threats from prison staff made the IGP unavailable to him and held, "we are not persuaded by the argument that a jury trial should be permitted if exhaustion is no longer possible, *i.e.,* if a dismissal for failure to exhaust will 'end litigation rather than shunting it to another forum.'" *Messa*, 652 F.3d at 310 (quoting *Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008).