UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TYRON ESPEY,

                                    Plaintiff,

                -vs-                                    DECISION AND ORDER

SGT. RICE, SGT. OPPERMAN, and C.O. LAMAR,     16-CV-6421 (CJS)

                                Defendants.
_____

**APPEARANCES**

For Plaintiff:                            Woodruff Lee Carroll, Esq.
                                       Woodruff Lee Carroll, PC
                                       600 East Genesee Street, Suite 108
                                       Syracuse, NY 13202
                                       (315) 474-5356

For Defendants:                    Hillel David Deutsch, A.A.G.
                                       NYS Attorney General's Office
                                       Department of Law
                                       144 Exchange Boulevard
                                       Rochester, NY 14614
                                       (585) 327-3222

**INTRODUCTION**

Plaintiff brought this case pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated when Defendants used excessive force against him during an incident that occurred while he was an inmate at Orleans Correctional Facility. The matter is presently before the Court for resolution of a factual dispute over whether Defendants are estopped from asserting the affirmative defense of Plaintiff's failure to exhaust his administrative remedies. *Espey v. Rice*, No. 16-CV-6421-CJS-JWF, 2019 WL 5290959, at *6 (W.D.N.Y. Oct. 18, 2019). For the reasons stated below, the Court finds that Defendants are not estopped from asserting the affirmative defense, and that

Plaintiff has, in fact, failed to exhaust his administrative remedies.  Therefore, Plaintiff's complaint [ECF No. 1] is dismissed, and the Clerk of the Court is directed to close this case.

## BACKGROUND

Plaintiff alleges that his constitutional rights were violated on September 19, 2015 when Defendants – Sergeants Rice and Opperman, and Corrections Officer Lamar – assaulted him in a hallway at Orleans Correctional after falsely accusing him of fighting with another inmate, and demanding that he share the identity of the other inmates involved in the fight.  Plaintiff maintained in an exhibit appended to the complaint that he had been asleep in his bunk when a fight broke out in the dorm, and that he did not know who the combatants were because he only awoke once the prison guards got involved.  Plaintiff believed he was singled out by Defendants because he had eczema on his neck that looked like an open wound from the fight.

In his complaint, Plaintiff indicated that he did not exhaust administrative remedies regarding the September 19, 2015 incident prior to filing in this Court.  Compl., June 22, 2016, ECF No. 1.  In that regard, he responded to the form complaint as follows:

> [Question] **If you did not exhaust your administrative remedies, state why you did not do so**:
>
> [Answer] The officers made threats and I was scared for my safety so I told my family. And my family called [the Office of Special Investigations].

Compl. at 5.

In their amended answer, Defendants asserted the following affirmative defense: "AS AND FOR A NINTH DEFENSE, Plaintiff has failed to exhaust administrative remedies as to some or all of the allegations of the Complaint."  Am. Answer, 5, Mar. 25,

2019, ECF No. 41. Shortly thereafter, Defendants moved for summary judgment on the issue of exhaustion. Mot. for Summ. J., Apr. 2, 2019, ECF No. 42.

In his papers, and at oral argument, Plaintiff identified three bases for forgiving his failure to exhaust administrative remedies. Mem. in Opp., May 10, 2019, ECF No. 48. First, he argued that Defendants are estopped from asserting the affirmative defense of failure to exhaust because they had threatened harm to Plaintiff if he sought an administrative remedy. Second, Plaintiff argued that he relied on a statement from an investigator from the Office of Special Investigations that he did not need to exhaust. Lastly, Plaintiff argued that exhaustion was unavailable to him because of the threats by the guards and because he had filed a New York Civil Service Law § 75 complaint in December 2015.

In its decision with respect to Defendants' motion for summary judgment, the Court noted that "[d]ocuments from [the Central Office Review Committee] show that Plaintiff did not exhaust any grievance to that body concerning the allegations of September 19, 2015." *Espey*, 2019 WL 5290959 at \*2. In addition, the Court found that "Plaintiff's complaint to the Inspector General, and his use of the Civil Service Law § 75 procedure did not suffice to meet the exhaustion requirements in the PLRA." *Id.* at \*6. Nevertheless, the Court denied Defendants' motion because "[a] material question of fact precludes summary judgment on the question of whether Defendants are estopped from asserting the affirmative defense of failure to exhaust, or whether they have shown that Plaintiff failed to exhaust." *Id.* Therefore, in accordance with *Messa v. Goord*, 652 F.3d 305, 310 (2d Cir. 2011), the Court held a pretrial hearing on the exhaustion issue on July 21, 2020.

3

## LEGAL STANDARD

Pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This exhaustion requirement "'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). To properly exhaust his administrative remedies, an inmate must complete the administrative review process in accord with the applicable state procedural rules. *Jones v. Bock*, 549 U.S. 199, 218–19 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).

The PLRA's exhaustion requirement is not jurisdictional, but is an affirmative defense that may be waived or subjected to certain defenses such as estoppel. *See, e.g., Ziemba v. Wezner*, 366 F.3d 161, 164 (2d Cir. 2004) (holding the affirmative defense of exhaustion of administrative remedies under the PLRA is subject to estoppel). In particular, the Second Circuit has recognized that the PLRA's administrative exhaustion requirement is subject to the following exceptions:

> when (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement.

*Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (citing *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)).

4

"Factual disputes relating to whether a prisoner's failure to exhaust should be excused can generally be resolved by the court, and do not ordinarily present a jury question." *Rickett v. Orsino*, 2013 WL 1176059, at *9 (S.D.N.Y. Feb. 20, 2013) (citing *Messa v. Goord*, 652 F.3d 305, 308–10 (2d Cir. 2011)). "Because failure to exhaust is an affirmative defense, defendants bear the initial burden of establishing . . . that a grievance process exists and applies to the underlying dispute." *Hubbs v. Suffolk County Sheriff's Dept.*, 788 F.3d 54, 59 (2d Cir. 2015) (citation omitted). If the defendants meet this initial burden, the burden shifts to the plaintiff to demonstrate that one of the aforementioned exceptions to the administrative exhaustion requirement apply. *Id.*

The Defendants in this case have met their initial burden. As the Court indicated in its October 2019 decision and order, the existence of the inmate grievance program [IGP] at Plaintiff's facility is well-established:

> New York State's IGP was first established in 1976 pursuant to New York Corrections Law § 139. *Amador v. Andrews*, 655 F.3d 89, 96–97 & n.3 (2d Cir. 2011) (citations omitted). The IGP defines a grievance as "a complaint, filed with an IGP clerk, about the substance or application of any written or unwritten policy, regulation, procedure or rule . . . or the lack [thereof][.]" N.Y. Comp. Code R. & Regs., tit. 7 ("N.Y.C.R.R.") § 701.2(a) (2006). To initiate the three-step grievance process, an inmate must file a written complaint with the Inmate Grievance Resolution Committee ("IGRC"), a facility-specific committee composed of inmates and appointed staff members. See 7 N.Y.C.R.R. § 701.4–5. The complaint must "contain a concise, specific description of the problem and the action requested." N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5 (Lexis Advance through May 10, 2019). Upon filing, the grievance clerk numbers and logs each grievance. *Id.* § 701.5(a)(2).

> If the inmate receives an unfavorable IGRC determination, the second step is to file an appeal with the facility superintendent. *Id.* § 701.5(c). If the superintendent's decision is unfavorable, the third step is an appeal to the Central Office Review Committee ("CORC"). *Id.* § 701.5(d); see also DOCCS Directive #4040 ("Dir. #4040").

*Espey*, 2019 WL 5290959 at *2.  Moreover, Plaintiff's complaint indicates that he did not exhaust his remedies through the IGP, and he testified to his familiarity with the process at the evidentiary hearing on July 21, 2020.

The burden thus shifts to the Plaintiff to show that his failure to exhaust his administrative remedies is excused under one of the exceptions recognized by the Second Circuit to the exhaustion requirement.  *See, e.g.*, *Daum v. Doe*, No. 13-CV-00088V(F), 2016 WL 11481727, at *4 (W.D.N.Y. Apr. 21, 2016), *report and recommendation adopted*, No. 13-CV-88V(F), 2016 WL 3411558 (W.D.N.Y. June 22, 2016).  As indicated above, the Court has already determined that the only possible exception the Plaintiff can demonstrate at this point is that Defendants should be estopped from asserting the affirmative defense of failure to exhaust.  *See Espey*, 2019 WL 5290959 at *6.

## DISCUSSION

At the evidentiary hearing on July 21, 2020, Plaintiff proffered his own testimony to show that he did not pursue administrative remedies through the proper channels at the correctional facility because he was threatened by three guards at the Special Housing Unit[1] ("SHU") at Orleans Correctional.  As Plaintiff explained it, after he was assaulted by the Defendants on September 19, 2015, he was put on suicide watch before being transferred to the SHU on or around September 24, 2015.  Plaintiff stated that, as he was being transferred to the SHU, he was met outside by three guards, one of whom was an "Officer Mehan" but none of whom were the Defendants.  One of these guards, not Officer Mehan, allegedly threatened Plaintiff by telling him to forget about being

---

[1] Plaintiff also referred to the Special Housing Unit as "the box."  He testified at the evidentiary hearing that "the box" is more commonly known as "solitary confinement."

6

assaulted by the Defendants, or else Plaintiff would have a very rough time in the SHU and possibly even lose some teeth. Plaintiff maintained that some of the guards in the SHU continued to make subtle threats against him until his release from the SHU approximately two weeks later.

According to Plaintiff's account, he did not try to file a grievance through the inmate grievance program while at the SHU because he was frightened by the threats of the guards in the SHU and did not want to be harmed. Instead, while in the SHU Plaintiff wrote a letter about the September 19 assault, which he secretly passed to an inmate friend of his who sent the letter on to Plaintiff's mother. Plaintiff's mother then both faxed and mailed a copy of Plaintiff's letter to the Office of Special Investigations ("OSI") in Albany. Plaintiff admitted during his testimony that, upon returning to the general population at Orleans Correctional from the SHU, he did not file a grievance about the September 19 assault through the inmate grievance program because he believed that his mother's contact with the Office of Special Investigations was sufficient.

For their part, Defendants did not produce any witnesses to refute Plaintiff's testimony.[2] Instead, they introduced two exhibits. Defendants' first exhibit was the affidavit Plaintiff submitted in opposition to Defendants' motion for summary judgment. *See* Aff. of Tyron Espey, May 9, 2019, ECF No. 46. Defendants' second exhibit was Plaintiff's letter to his mother, dated October 2, 2015, which detailed Defendants' alleged assault. *See* Aff. of Tyron Espey (Ex.), May 9, 2019, ECF No. 46.

---

[2] The Court noted at the hearing that the Court's inquiry would have been aided by the Defendants' proactive production of at least one witness, particularly Officer Mehan, who was apparently known to counsel.

Upon cross-examination of Plaintiff, Defendants pointed out the discrepancy between Plaintiff's testimony and his affidavit, in which he claimed, "I was physically unable to file a grievance from September 1[9], 201[5] to October 14, 2015 because I was under suicide watch and could not communicate with anybody." Aff. at ¶ 28. In particular, Defendants observed that Plaintiff must have been physically able to file a grievance if he was physically able to write and send the letter to his mother, which she then forwarded to OSI. Additionally, Defendants also pointed out the discrepancy between Plaintiff's testimony at the hearing that he knew the identity of the inmates who were fighting on September 19, 2015, and his affidavit, which stated that "I do not know who was fighting." Aff. at ¶ 9. Ultimately, Plaintiff admitted that his affidavit contained untruths.

Having considered all of the evidence produced at the hearing, the Court finds that Plaintiff has failed to demonstrate that Defendants should be estopped from asserting administrative exhaustion.

To begin with, Plaintiff was not a credible witness. *Benjamin v. Goord*, No. 02 CIV 1703 NRB, 2010 WL 3291590, at *4 (S.D.N.Y. Aug. 9, 2010), *aff'd sub nom. Benjamin v. Com'r of Corr. Dep't of New York*, 445 F. App'x 385 (2d Cir. 2011) (finding credibility issues where Plaintiff offered "shifting and expanding explanations to excuse his failure to file a grievance"). During the hearing, Plaintiff testified first that he was physically unable to file a grievance from the SHU because he was under suicide watch and did not have writing instruments and paper available. Then, after acknowledging that he wrote a letter to his mother from the SHU, Plaintiff testified that although he became physically able to file a grievance at some point during his confinement in SHU, he was

too frightened to do so for fear that he would be harmed by the SHU guards. Moreover, Plaintiff admitted that while in the SHU he filed a procedural grievance about a hearing which was not related to the alleged September 19 assault. Lastly, despite his earlier statements professing ignorance as to the combatants in the fight amongst inmates leading up to the alleged September 19 assault, Plaintiff admitted at the hearing that he actually did know who was fighting.

More to the point, however, is Plaintiff's testimony about his failure to file a grievance once he returned to the general population from the SHU. Plaintiff noted that he entered the SHU on or around September 24, 2015 and was confined there for approximately two weeks prior to being returned to the general population. The inmate grievance program requires that an inmate submit his grievance within 21 calendar days of an alleged occurrence. 7 N.Y.C.R.R. § 701.5(a)(1). Given that the alleged assault occurred on September 19, 2015, Plaintiff had until October 10, 2015 to timely file a grievance through the IGP. Assuming the relative accuracy of Plaintiff's dates, he would have been released from the SHU somewhere around October 7, 2015, with three days to file a grievance while incarcerated with the general population.

Plaintiff first testified that he did not file a grievance through the IGP after his release from the SHU because he continued to be harassed and threatened by prison guards while he was in the general population, though he could not identify any of the guards by name. After further questioning, however, Plaintiff admitted that he did not file a grievance through the IGP because he believed that his mother's contact with OSI was sufficient. In other words, Plaintiff admitted that what prevented his filing a grievance at that time was not the threat of harm from the Defendants, but rather his

9

own misunderstanding of the proper avenue for pursuing his administrative remedies. Hence, Defendants cannot be estopped from asserting the affirmative defense of failure to exhaust.

## CONCLUSION

Consistent with the foregoing, the Court finds no basis for either (a) excusing the plaintiff from the requirement of exhausting available administrative remedies, or (b) estopping the defendants from raising failure to exhaust as a defense. Therefore, it is hereby ORDERED that Plaintiff's complaint [ECF No. 1] be dismissed for failure to exhaust administrative remedies. The Clerk of Court is directed to close this case.

SO ORDERED.

DATED:   July 30, 2020
         Rochester, New York

*Charles J. Siragusa*
CHARLES J. SIRAGUSA
United States District Judge